# Carrie Arnold, Appellee, v. City of Centralia, Appellant.

1. Mobs—*when evidence sufficient to establish injury to property by mob.* In an action against a city under Hurd's Rev. St., ch. 38, sec. 256a (J. & A. ¶ 3917), to recover three-fourths of the value of property injured by a mob, evidence *held* to show that the injury sought to be recovered for was done by a mob within the meaning of section 256s of the same chapter (J. & A. ¶ 3911), defining a mob to be "any collection of individuals, five or more in number, assembled for the unlawful purpose of offering violence to the person or property of any one supposed to have been guilty of a violation of the law, or for the purpose of exercising correctional powers over any person or persons by violence, and without lawful authority."

2. Mobs—*when evidence sufficient to sustain verdict for injury to property by mob.* In an action against a city under Hurd's Rev. St., ch. 38, sec. 256a (J. & A. ¶ 3917), to recover three-fourths of the damage to property injured by a mob, where it appeared that the assemblage of persons whose acts caused the injury was a mob within the meaning of section 256s of the same chapter (J. & A. ¶ 3911), evidence *held* to entitle plaintiff to recover.

3. Mobs—*when instruction as to right of recovery for injury to property by mob not prejudicially erroneous.* In an action against a city under Hurd's Rev. St., ch. 38, sec. 256a (J. & A. ¶ 3917), to recover three-fourths of the damage done to property by a mob, an instruction that plaintiff's right of recovery would not be "affected by the negligence of the city in preventing damages being done" to plaintiff's property, *held* not sufficiently faulty to warrant a reversal, although inartificially drawn and not sufficiently guarded.

4. Mobs, § 3*—*when city liable for injury to property by mobs.* Hurd's Rev. St., ch. 38, sec. 256a (J. & A. ¶ 3917), providing that a city or county shall be liable for three-fourths of the value of property destroyed therein by mobs and riots, is not based on any elements of negligence on the part of the city in failing to disperse the mob or to prevent injury to property, and a recovery may be had where the evidence warrants such recovery regardless of any question of negligence.

Appeal from the Circuit Court of Marion county; the Hon. JAMES C. McBRIDE, Judge, presiding. Heard in this court at the March term, 1915. Affirmed. Opinion filed December 1, 1915.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

W. G. Murphey and S. L. Dwight, for appellant.

L. B. Skipper and G. F. Merion, for appellee.

Mr. Presiding Justice Higbee delivered the opinion of the court.

Appellee sued appellant for injuries to a house she owned in Centralia, Illinois, seeking to recover under section 256a, ch. 38, Rev. St. (Hurd's 1912, J. & A. ¶ 3917) which provides that: "Whenever any building or other real or personal property, except property in transit, shall be destroyed or injured in consequence of any mob or riot composed of twelve or more persons, the city, or if not in a city, then the county in which such property was destroyed shall be liable to an action by or in behalf of the party whose property was thus destroyed or injured, for three-fourths of the damages sustained by reason thereof." To the declaration filed, the general issue was pleaded and there was a verdict in favor of appellee for $60. A remittitur of $3.75 was entered by appellee, and a motion for a new trial having been denied, judgment was given against appellant for $56.25. Appellant seeks to reverse the case, contending that under the evidence there is absolutely no liability on its part and the court should have given a peremptory instruction in its favor at the close of all the evidence; that the court erred in refusing its motion to set aside the verdict and grant a new trial; that the verdict is contrary to the law and the evidence, and that the sixth instruction given for appellee was erroneous, because it assumed negligence on the part of appellant.

The real ground of reversal urged by appellant, which includes all the contentions above referred to except that relating to appellee's sixth instruction, is that the proofs do not show the injury to the property to have been caused by a mob composed of twelve or more persons. It is not questioned on this appeal

that the property was injured or that the amount allowed is too large if a recovery is proper.  According to the proofs, a family by the name of Bryant lived in a tenement house owned by appellee in said city, and a negro named Sherman stayed with them.  Fred Reid, a policeman, had a criminal warrant for Sherman and went to Bryant's house to arrest him. Sherman came to the door and on pretense of getting his hat stepped back, got a gun and fired at Reid, wounding him severely, and then hid in the house. Reid managed to get word to the chief of police, who came with a deputy sheriff, one Guy Livesay, whom he had deputized.  They entered the house, and Sherman, who was concealed under a bed, fired upon them when he was discovered, breaking Livesay's leg.  Immediately after this, the chief of police and a constable, named Watts, deputized a number of citizens from the crowd which had been attracted by the firing of the revolvers, and had assembled in that vicinity, and made arrangements to capture the negro.  There were some twelve or thirteen persons in all who were deputized, and they, with others, began shooting through the doors and windows and all parts of the house with guns and pistols, seeking to either hit Sherman or run him out, directions being given by some one in authority to shoot him if he appeared.  Threats of hanging the negro were made and application was made to appellee for permission to burn the building, which she refused.  Several hundred people gathered on the scene and the shooting lasted for two or three hours before the negro surrendered.  The evidence for appellee showed shooting was general by men and boys and that it came from all directions; that first one and then another would fire regardless of whether he was deputized or not, while the proof on the part of appellants tend to show that the injury was done by the shooting of officers and those who had been deputized to assist them, alone.

Paragraphs of section 256s, ch. 38, Rev. St. (J. & A. ¶ 3911), above referred to, provides that: "Any collection of individuals, five or more in number, assembled for the unlawful purpose of offering violence to the person or property of any one supposed to have been guilty of a violation of the law, or for the purpose of exercising correctional powers over any person or persons by violence, and without lawful authority, shall be regarded and designated as a 'mob.'" That threats of burning the house and hanging Sherman came from among those who were not deputized is well proven, and we find ample proof that others than those deputized assisted in inflicting the injuries complained of by shooting. Regardless of the question whether, under the law, the city would be liable for injuries inflicted upon appellee's property by officers and those deputized, under the circumstances mentioned, yet the proofs here show that a mob, as defined by the statute, had collected around appellee's premises and that the persons composing such mob indiscriminately assisted in inflicting the injury complained of. We are of opinion that under the proofs, appellant was liable for three-fourths of the injury to appellee's property, by virtue of the statute upon which the suit is based.

The sixth instruction, given for appellee, told the jury: "If you believe from the evidence in this case that the plaintiff is entitled to recover, then such right of recovery would not be affected by the negligence of the city in preventing damages being done to the property in question, provided the plaintiff herself was not negligent or careless in permitting such damages to be done, as it is no defense to an action for damages that the city could not have prevented the injury or destruction of the property." The criticism made by appellant of this instruction is that it assumes the city was guilty of negligence in not preventing damages being done to the property in question. The instruction was inartificially drawn and might properly have been

more carefully guarded, but the fault it contains was not of sufficient importance to warrant a reversal of the judgment for that reason. The question as to whether the city was negligent or not was wholly immaterial in this case, as the liability imposed by statute is not based upon any elements of negligence on the part of the city, and recovery may be had in a case where the evidence otherwise justified it wholly, regardless of the fact whether the city or its officers were or were not guilty of negligence in failing to disperse the mob or prevent injury to property. *Sturges v. City of Chicago*, 237 Ill. 46.

The record discloses no substantial reason why the judgment in this case should be reversed and the same is therefore affirmed.

*Judgment affirmed.*

MR. JUSTICE MCBRIDE having tried this case in the court below, took no part in the case here.